Good morning, Your Honors. May it please the Court, my name is Diogenes Kikatos. I'm a member of the firm of Sigur Weiss, LLP, along with my co-counsel, David Arbogast of Arbogast & Burns, LLP, and J. Mark Morf, Spiral Moss, LLP, on behalf of plaintiffs Appellants Dorothy Peralta, Stephen Bickverdi, and James Moscoso. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. Sure. Thank you, Your Honor. Your Honor, Your Honors, this case arises from defendants' marketing of so-called option-adjustable rate mortgage loans, or option-armed loans, a highly deceptive loan product that was marketed using a 1 percent teaser rate of interest, a rate, loan documents that contained payment schedules based on that teaser rate. However, under the promissory note that borrowers entered into, that rate was applicable for all of 30 days, after which the loan rates skyrocketed to 7, 8, 9 percent, the result being that while homeowners were making timely payments in accordance with the schedule in their loan documents, they were experiencing negative rapidization and a loss of equity in their homes. There are tens upon tens of thousands of these borrowers affected by this scheme. When plaintiffs and the class on whose behalf they are suing sought redress in the California State Court, asserting purely California state law claims against these defendants, Countrywide Bank has taken the position that a California court is without authority to adjudicate this controversy, and that the only state court that it could conceivably be sued was in Colorado, a state that, according to the very documents and the record excerpts before the Court, a state whose banking board found that Countrywide Bank had an insufficient presence. Well, state banks enjoy, if you want to use that word, dual citizenship. Is that right? Correct, Your Honor. And you're asking that federally charted banks be treated the same. Correct, Your Honor. That brings us to the central question on this appeal this morning. The question is, does the term located, for purposes of determining a national bank's citizenship in 28 U.S.C. Section 1348, does that mean, as the district court found here, only the state where the bank maintains a home or main office is specified in its article of disassociation, or does it mean something else as two circuit courts, the Seventh Circuit and First Star Bank, and the Fifth Circuit and Bank Wendy Horton held? These two courts conducted exhaustive analysis of Section 1348, its predecessor statutes, dating back to 1882, 1887, 1911, and a long line of Supreme Court authority interpreting those predecessor statutes. And these include Leather Manufacturers National Bank, decided in 1887, Petrie v. Commercial National Bank, decided 1892. Let me ask you this. This case, the matter we have before us today, doesn't involve CAFA, right? Well, it does, Your Honor, because while defendants have said this has nothing to do with CAFA, CAFA is the basis why we're here. They invoked CAFA jurisdiction. And you're asking us to answer a very important question, and we have a limited decision period. The time to make the decision will expire on April the 23rd, right? I believe it's April 24th. I believe it's a 60-day period specified in 1453, correct? April the 24th. And why should we make that decision with that limited time constraint? That issue can be presented later on. Your Honor, first, I do believe that 1453 does allow the Court, I believe with consent of the parties, I do believe the Court can take some additional time. But CAFA is why we're here. These defendants invoked CAFA. It is true that the question, the main question is an interpretation of 1348. But it is one that, again, has been addressed by two circuit courts whose reasoning has been adopted by one district court in this circuit. And it is not really that difficult to question, contrary to what the defendants posit. The Supreme Court in Wachovia Bank, the case that the district court relied on wrongly, that court in footnote 8 had declined to address the whole principal place of business issue. But its reasoning, the reasoning the Court engaged in there was very similar to the reasoning of the Seventh Circuit and the Fifth Circuit. Because what the Court was doing there was resolving a split that had arisen between those two circuits and the Fourth Circuit, which had read the located languages, meaning every state where a national bank has a branch. The district court's reliance on Wachovia Bank was misplaced because, if anything, that court's reasoning supports the adoption of the Seventh Circuit's and the Fifth Circuit's decisions because it expressed the same concern for maintaining jurisdictional parity between state banks and corporations and national banks. And indeed, Justice Ginsburg noted that adoption, affirmance of the Fourth Circuit's interpretation would mean that national banks would be singularly disfavored of corporate bodies and that neither 1348's language nor that court's precedent, the same precedent that the Seventh Circuit and First Star Bank and the Fifth Circuit in Horton had examined, supported such reasoning. The other basis of the district court's decision here was a district court decision from the Second District of New York in a case called Excelsior Fines. And it was fair to submit that Judge Kodal there erred for two reasons. One, he gave inadequate consideration to the need for maintaining jurisdictional parity. But secondly, he relied on one fact at the end of his opinion, after examining his opinion, one fact and one fact alone, and that is that 1348 had been enacted before 1332 was amended to include the principle place of business language. And he said for that reason, one cannot incorporate that into 1348. However, what that overlooks is a principle that the Seventh Circuit noted, a maxim, which is that the implications of the statute can be altered by the implications of the later statute. This is not a radical principle. The Seventh Circuit cited U.S. v. Fausto, the Supreme Court decision for that principle. Judge Kodal dismissed that because he said Fausto is a repeal-by-implication case. This is not a repeal-by-implication. But the maxim that the implications of the statute may be affected by later statute is one that the Supreme Court has invoked on numerous occasions and circuit courts have invoked. And FDA v. Brandon, Williams & Tobacco is a case reported 529 U.S. 120, a case where the Supreme Court noted that a succession of congressional legislation on the subject of tobacco had precluded the FDA from doing an about-face with regard to its position that its jurisdiction to regulate. Well, listen, you're making a good argument, and I'll tell you that I live in Woodland Hills, which adjoins Calabasas, and that's the main place of Countrywide's business. Correct, Your Honor, and Your Honor raises it. Do you know what Calabasas means? No, I do not, honestly. It means pumpkin. Oh, I did not know that. Thank you. I learn something every day. Notably, Your Honor just focused on a salient point. These defendants have never denied that Countrywide Bank is the principal place of business in California. They've never denied that. Quite the contrary, in numerous other federal court filings, they have averred that California is its principal place of business. And the record excerpts we submitted contain numerous submissions and other pieces of evidence that California is the principal place of business. They maintain a vast presence here, thousands of employees, huge offices and so forth. And what this adoption of their argument is, as unfortunately the district court did here, Judge Hamilton did here, would create the same potential for abuse as existed prior to the Amendment 1332. They've taken over by Bank of America. Your Honor, that's an argument they made, but it's one that they failed to adequately prove below. I see my time is running up, and I reserve time for rebuttal. Do you know where the Bank of America started? In California originally, but, Your Honor, following some mergers in the 80s or 90s, they had moved their headquarters, I believe, to North Carolina. So it ceased to be a California-based bank. But initially, yes, it was a San Francisco-based, if I'm not mistaken. Bank of Italy. I had my first nickel-and-penny savings account there.  Thank you, Your Honor. I think my time is up, and I had reserved a couple minutes for rebuttal. Thank you. We've got a little left for you in the pumpkin. Thank you. Good morning, Your Honor. May it please the Court. My name is Thomas Heffron, and with my co-counsel, Mr. Brooks-Brown, we represent the defendants in this case. As Judge Pregerson remarked and questioned, the first position that we took in the brief and the position we would urge, Your Honors, is that this case should be dismissed, this appeal should be dismissed, because the issue that is presented to Your Honors is not unique to CAFA. And we cited a couple of cases where other circuit courts had done the same thing after they had granted a permission to appeal. In particular, the Alvarez case in the Fifth Circuit, where the court granted an appeal from a CAFA case, but when the briefs came in, there was a recognition by the court that the issue was not unique to CAFA. And based upon that, the court, rather than reach that issue, though it was fully briefed and before the court, the court dismissed the appeal and said the purpose of CAFA appeals is to present for early resolution these important questions of CAFA. Well, this question certainly comes up in CAFA, because sometimes national banks remove CAFA cases. It is not unique to CAFA. If this was not a CAFA case, just a regular diversity case, this appeal would not be appropriate, because it would simply be a question of the diversity of a particular litigant, which is an issue which Congress long ago decided should not be raised in the first instance on an interlocutory basis. There's time later to deal with that during the course of the appeal. It's particularly interesting here and particularly appropriate to dismiss this appeal, because the question, one of the questions that fundamentally that was litigated in the district court, which we contend is not necessary for this court's decision, but one of the questions was whether Bank of America National Association, the National Bank of Bank of America, had merged with Countrywide Bank. And if there was a merger, there was no doubt whatsoever that under CAFA, the citizenship of that surviving company, that surviving bank, was North Carolina. Therefore, there's diversity. Well, the district court found that that was not necessary to decide the issue before her. What's interesting is if this appeal is dismissed and we go back down to the district court, plaintiff's position is going to be that they did merge, because plaintiff wants to recover against the successor to Countrywide Bank. And so they're going to establish the merger. They're going to want to establish the merger in the district court. And so we're not going to see the issue on end of case review. And so that's another reason, it seems to us, why the interlocutory appeal, which doesn't present a CAFA issue, ought to be dismissed, because it's not likely ever to come back before this court. Now, on the main issue, if the court reaches it, Judge Hamilton found the national bank, a national bank is a citizen of the home office or main office stated in its Articles of Association. Just a month and a half ago, Justice Breyer said in the Hertz case that jurisdictional rules are strongest if there is a clean, simple application. And that's clean and simple. You can look in the Articles of Association and see what the main office is and apply that rule. And in this instance, that main office, there's no dispute that for Countrywide Bank, if there was no merger, there's no dispute the main office was Colorado. Then, therefore, CAFA removal was appropriate. Regarding the question of whether or not, of how you determine the location of a national bank, we believe that that question was answered in the affirmative and clearly by the Supreme Court in the Wachovia Bank case. In Wachovia Bank, the Supreme Court stated the question before that court. And the question the Supreme Court said, which was interpreting 28 U.S. Codes, Section 1348, the same statute we've got here, and the word located, the same word we've got here. The Supreme Court said the question before it is, does the word located mean the main office as stated in the Articles of Association or does it mean everywhere a bank has a branch? That's the question the Supreme Court stated in its opinion, was the question before it. Then the Supreme Court went on, Justice Ginsburg went on and specifically said, we hold that the place where a national bank is located is the place stated in its Articles of Association. That, it strikes us, answers the question. Now, the plaintiffs contend that the Supreme Court didn't quite say that principled place of business doesn't count. And it's true the Supreme Court didn't specifically say principled place of business doesn't count. But the court was aware, you have to look at the opinion or even looking at the oral argument, was aware that some courts, Firstar and Horton, had said principled place of business counts. The Supreme Court in stating the question before it and stating the holding simply did not adopt the principled place of business. Why isn't the state, the approach that we've taken with state banks makes sense so that we apply it to federally charged banks? Sure. The state banks are treated as corporations because they are a corporation incorporated by any state. Therefore, the general diversity rule applies. And up until 1957, okay, the diversity rule for corporations was not codified and it was the place of incorporation only. Principled place of business was not relevant. This statute was enacted in 1948. And in 1940, well, it was enacted originally in 1887, but it was last dealt with by Congress in 1948. And so when Congress enacted this statute in 1948, there was parity between national banks and state banks. Everybody was governed by what was effectively the articles of incorporation, articles of association state. Okay? One state. But in 1957, Congress changed the rules. And Congress said for any state corporation, it's going to be two places at most, place of incorporation or principled place of business. But when it changed the rules, it did not apply that change of the rules to national banks. It didn't apply to lots of other entities either. It didn't change the rule on individuals. It didn't change the rule on partnerships. It didn't change the rule on an incorporated association. It changed the rules on only one entity, and that is state chartered, state incorporated entities. So while we reject the principle, and I'll explain why in a second, that parity was contemplated in 1948 when this statute was enacted, Congress changed the rules of the game in 1957 and did not change the rules related to national banks. Now, we don't believe that parity is appropriate in any event because the history of this statute, when you go back when it was first enacted in 1882, the statute said national banks and state banks shall be treated the same. Specific parity, incorporation by reference, essentially. Then five years later, Congress threw that rule out and said, we're not going to use parity with state banks anymore. Instead, we're going to say two things. We're going to say it's where the national bank is located. Different rule than state banks, which was state of incorporation. The second thing Congress said was, and when it enacted the statute in 1887, it said, we're going to say, therefore, we want to treat national banks like individual citizens. And you go back, and we cited the statute. If you go back to the act of 1887, you'll see that. And so it said located, and it said, in using the word located, it said, therefore, we're going to treat national banks like individual citizens. And, of course, from then up until today, individual citizens have always had only one place, and that's domicile. So parity was not something that was contemplated, except in 1882, and that statute was thrown out. And second, to the extent that parity was contemplated, in 1957, Congress threw that rule out. Now, the Supreme Court in the Cardema v. Arcoma Associates case several years ago faced the question that was somewhat similar to Your Honor's question, which is, gee, doesn't it make sense to have this kind of entity treated the same as that kind of entity? In that instance, it was a partnership. And the partnership said, gee, we think it makes sense to have partnerships treated like corporations. And I think it was Justice Scalia said, you know what, that may be right. Partnerships in today's modern world, maybe they should be treated just like corporations, and you shouldn't look at the identity of the partners and their citizenship and such. But the Court said, definition and explication of jurisdictional rules for diversity purposes is not a question of policy for the courts. It's a question of enactment for the Congress. And that was the opinion of the Court, and the same holds true here. We're talking about an entity other than corporations. We're talking about national banks. There's other principles going on. There's other considerations going on. I'll give you one example. Corporations, people say, gee, a corporation can just go and incorporate in Delaware. And they've only been to Delaware once, and that's to file the paper and pay the fee. National banks, their home office, their main office, has real significance. Real significance for purposes of a national bank. National banks have a main office, and they have branches. The main office is the place where the OCC looks to, or the OTS looks to, for purposes of the bank's operations, for purposes of the interest rate that it uses to charge customers. There's a series of sections that talk about why home state matters. So one reason why you shouldn't treat national banks and state banks the same is because Congress never did. Congress, in fact, threw that rule out. Another reason is because they are different. They're very different in terms of what the designation of that place of incorporation means. But in any event, that should be left to Congress. As Justice Breyer recently recognized in the Hertz opinion, jurisdictional rules don't always come out to precisely the way you might hope, but because even in the corporation's context, you can have removal of a situation where the company has enormous contacts with the state. But nonetheless, because it doesn't meet one of those two tests, you can remove the case. But a clear, straightforward, simple rule is of great value, and that rule here is very simple, which is location. And location, from 1948, from 1887, when national banks always could only be in one place, location is the place stated in the Articles of Association. So we say Judge Hamilton got it all correct, even if the court decides to go ahead and raise the question. Yeah, but times have changed, haven't they? Times have changed. In fact, in 1994, Congress decided to allow national banks to have interstate branches. And so Congress could have, at that time or subsequently, said, gee, now that national banks can go someplace other than in one state. Yeah, they allow them to sell insurance and pedal securities and all kinds of stuff. Correct. And what's interesting is that Congress, however, has not gone ahead and said, therefore, we want to treat national banks like state banks or corporations and have more than one place from which diversity shall be founded. It has never changed this decision from 1887 to use the word located and to say that they are to be treated like individual citizens, which is only one place. Well, maybe they've been busy with other things. They've been busy with other things. But on the other hand, it's not as if the banking industry has not drawn the attention of Congress every year in terms of legislation. I mean, this is not a backwater where somebody says, gee, maybe Congress never thought about it. In fact, in 2005, Congress addressed where a thrift, a savings association, where that should be located and said only in one place, the home state. Those entities are most like national banks. They're federally chartered banks. And Congress, in 2005, said those are located in only one place. And the congressional report, which we cited in the papers, says, right after the Wachovia bank case, the congressional report says we're enacting this statute to provide parity between national banks and other federally regulated institutions, thrifts, because they're both located in their home state. So Congress has paid attention. The world has changed. But they've decided to keep the national bank jurisdiction in only one place, and that's location. And that's where we find ourselves today. Thank you. Thank you. Rebuttal. Thank you, Your Honor. Very quickly on the question of timing. 2820 and 1453C does give the court the court can extend the time for rendering a decision on this appeal with consent of the parties, certainly plaintiffs' appellants' consent. The court would have to ask defendants what their position is. But even absent their consent, the court can take additional time, attend additional days in the interest of justice. But the record cannot be expanded. Even if we continued this case for years, the record is the record. That is correct, Your Honor. The record was established. But, again, the record was their burden to create. And they failed to prove principal place of business. They failed to prove the merger having occurred. And that's another point I'd like to address. They talk about, well, on remand, we would argue that Bank of America had to do a merger. There's no dispute about the merger. The question is, was there a merger consummated on July 16th of last year when they effected removal? And this is a well-financed corporate defendant that is represented by a legion of attorneys. They presented a bunch of hearsay evidence and snapshots of website. But the one piece of evidence they never produced was an actual document establishing that the merger had been consummated on July 16th of last year. Very quickly, Wachovia Bank. Footnote 8 is clear and unambiguous. The Supreme Court was not addressing the principal place of business issue. It was leaving that for another day. And it noted, in fact, it relied on much of the analysis of Firstar Bank and Bank Horton v. Bank One. So, again, for defendants to claim that the Supreme Court has settled this issue flies in the face of the plain language of footnote 8 of Justice Ginsburg's opinion. Defendants also argue parity. Well, the parity is not a consideration. Well, it is very much a consideration. It is what animated the Seventh Circuit's analysis, the Fifth Circuit's analysis, and Justice Ginsburg's analysis. It is to ensure that national banks are not treated less or more favorably than state banks. Parity has been the overriding concern. And that is what has animated the courts in interpreting 1348 and its predecessors. Defendants also argue that the main office rule is a clean and simple rule. Well, after Hertz v. Friend issued this past February, principal place of business is a very simple rule to apply. It's a nerve center. They've never disputed. California is their nerve center. In fact, they've asserted it before federal courts and before the Judicial Panel on Multidistrict Litigation and Violence, again, which are in the record. They focus on thrift legislation, which was in 2006, not 2005, specifically 12 U.S.C. 1464X. It's not an argument they made below. Below, they tried to argue the Countrywide Bank was a thrift, came within the scope of that statute, which flew in the face of their assertion that it's a national bank. Putting that aside, that's a provision in the banking code, not a provision of the judicial code. But in any event, it's murky language. It's home office. Banking code doesn't define what a home office is. And it provides no guidance, really, as to what 1348. And it doesn't destroy the need for parity because prior to 2006, a thrift could not invoke federal diversity jurisdictions. So to say that this now trumps 1348, meaning that this is limited to one state, is simply not meritorious. Nor is the legislative history persuasive because that legislative history talked about achieving greater parity between thrifts and national banks, not total parity, in any event. I have nothing further to say. I thank the Court for its time. Thank you very much. Appreciate the excellent argument on both sides. That is submitted. And the next case, U.S. v. Rafael Aleman Martinez, that's submitted. And then Bajakian v. Schwarzenegger, that's submitted. And now we come to United States of America v. Stephen Emery Butcher. Thank you.
judges: Conlon, Pregerson, Thompson